GERSTMAN SCHWARTZ LLP
RANDY E. KLEINMAN (CA SBN 320061)
rkleinman@gerstmanschwartz.com
1399 Franklin Avenue, Suite 200
Garden City, New York 11530
Telephone:    (516)880-8170
Facsimile:    (516) 880-8171

Attorneys for Plaintiff ALI AL-AHMED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALI AL-AHMED,<br><br>        Plaintiff,<br><br>v.<br><br>TWITTER, INC<br><br>        Defendant | CASE NO.: 3:21-cv-08017-EMC<br><br>**DECLARATION OF RANDY E. KLEINMAN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO TWITTER, INC.'S MOTION TO DISMISS**<br><br>Date:        March 3, 2022<br>Time:        1:30 p.m.<br>Dept:        Courtroom 5, 17th Fl.<br>Judge:       Hon Edward M. Chen<br><br>Date Filed:  October 13, 2021<br>Trial Date:  None Set |

-1-

KLEINMAN DECLARATION IN SUPPORT OF PLAINTIFF'S OPPOSITION TO TWITTER, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-08017-EMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF RANDY E. KLEINMAN

I, Randy E. Kleinman, hereby declare as follows. I am admitted to practice before all Courts in the State of California and am a member of the Bar of this Court. I am an attorney of record for Plaintiff herein and if called upon to do so, could and would testify competently to the following:

1.   Attached hereto as **Exhibit A** is a true and correct copy of the Declaration of Plaintiff Ali Al-Ahmed in Support of in Support of Plaintiff's Opposition to Twitter, Inc.'s Motion to Dismiss the Complaint, or Alternatively, to Transfer Venue, filed in the Southern District of New York in *Al-Ahmed v. Twitter, Inc.*, Case No. 1:20-cv-04982-VEC.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 17th Day of January, 2022, at Garden City, New York

/s/ Randy E. Kleinman, Esq.
Randy E. Kleinman

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALI AL-AHMED,<br><br>        Plaintiff,<br><br>v.<br><br>TWITTER, INC.; ALI HAMAD A ALZABARAH<br><br>        Defendant | CASE NO.: 3:21-cv-08017-EMC<br><br>**PLAINTIFF ALI AL-AHMED'S DECLARATION IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT TWITTER, INC.'S MOTION TO DISMISS**<br><br>Date:     March 3, 2022<br>Time:    1:30 p.m.<br>Dept:    Courtroom 5, 17th Fl<br>Judge.   Hon Edward M. Chen<br><br>Date Filed:  October 13, 2021<br>Trial:      None Set |

I, Ali Al-Ahmed, declare as follows:

1. I am the Plaintiff in the above-referenced matter, and as such, I have personal knowledge of the facts herein. I make this declaration in opposition to Twitter's Motion to Dismiss Plaintiff's First Amended Complaint, or Alternatively, to Transfer Venue.

2. I filed the instant Complaint against the Defendant Twitter, Inc. ("Twitter") in part to vindicate my rights. I am a political refugee from the Kingdom of Saudi Arabia ("KSA"). I am alive today because I was granted political asylum due to the danger posed by the KSA and am grateful to be living in these United States. I am a known critic of the KSA, and I have used social media to disseminate information on the royal family, human rights violations, and more. In an attempt to silence my voice, KSA agents working for Twitter invaded my Twitter account

-1-

and exposed me and my family members, friends, and political and business associates to imprisonment, torture, and even death.

3. I believe that agents of the KSA accessed my personal Twitter account including messages between myself and individuals still living in and in close proximity to Saudi Arabia who were in close contact with Jamal Khashoggi, the journalist who was not uncoincidentally slain following the invasion of multiple Twitter accounts. I believe that Twitter was either complicit in these actions or so recklessly and grossly negligent that Twitter had blood on its hands for having misrepresented its safety and having failed to keep its promises.

4. As a threshold matter, and to eliminate any possible ambiguity, *I did not receive any notice form Twitter in December 2015*, despite carefully checking all of my emails, including my spam folders. Twitter did not publicize either the hack or the "notice" at all. Indeed, the few news items all quote a bare handful of users who received and Tweeted about a notice they had gotten. Twitter itself was silent about this. Although Twitter claims that this received "wide coverage in the popular press", Defendant carefully avoids claiming credit for any coverage – because it cannot. Indeed, the first time I learned of Twitter's involvement was on November 19, 2019, when Ahmed Abouammo and Ali Alzabarah were indicted for acting as agents for the government of Saudi Arabia who, while employed at Twitter, accessed user information without authorization and provided it to Saudi Arabian government officials.

5. And even the lucky few who got the notice had no reason to think that KSA had infiltrated operatives *into Twitter* and pulled off an inside job. Given wide suspicions that Russia, China, and North Korea have engaged in hacking in the United States, the KSA is hardly the first regime to come to mind in a vaguely worded mention of "government sponsored" cyber-attacks.

6.   In any event, I believe that agents of the KSA or other Twitter employees also appear to have accessed my private Twitter accounts to read and manipulate content including, but not limited to, purported private/direct exchange messages that were then used as a pretext by Twitter for closing down my Arabic-language account. *See* Twitter's RJN, Ex. 5 (*e.g.*, "Damn your mother, you Ahamari, you mountain monkey, you Ethiopian you slave, you pagan, you cow, you beast of burden!"). I do not recognize this statement apparently attributed to me by Twitter and which Twitter now alleges was the basis for terminating my Arabic-language account. However, even were this hyperbolic and outlandish statement properly attributed to me (which it is not), rather than a fabrication, plant or some other obscure, anomalous, and/or provoked response, I do not see how a private Tweet, any more than a private text message or private phone call, would authorize walling me off from my own confidential and privileged lists of Arabic-speaking followers and sources.

7.   Additionally, I would note that certain words used in the direct message attributed to me are colloquial regional expressions that I would never use. To give you some idea of what I mean, this would be the kind of expression a Southerner from a rural area in the United States might use, and Twitter is trying to attribute it to a cosmopolitan New Yorker. In addition, the translation is entirely inaccurate. For example, their translation of the word "slave" would be more accurately translated to "lowlife," and is a common slang term in Arabic. Likewise, "I see your face" is not accurate – it actually says, "look at yourself"; also, "your teeth sticking out" is entirely inaccurate. The short of it is that while I do not know the source of this apparently privately transmitted statement, *it is not mine*, and cutting me off from my sources because of it is ridiculous. Twitter has failed to provide who this message was allegedly sent to or the context of the message.

8.   Additionally, the following is a Tweet from a Saudi citizen, which is clearly a threat and translates to: "God willing, I am traveling to America in two months and I will see you. You will never tweet again. Mohamed bin Salman is a crown over your head." I made a complaint to the US embassy and to Twitter, but Twitter took no action whatsoever, which illustrates their complete hypocrisy and fundamental bias. In fact, the Tweet was never removed and can still be found at the following link: https://twitter.com/z7x77/status/957090786990010368.

9.   I think the very fact that Twitter has walled me off from my Arabic-language sources and followers, but not my English-speaking audience, is in and of itself telling, and belays Twitter's true intent, which was to censor me on behalf of Twitter's Saudi Arabian investors to preserve that line of credit—so to speak—and to preserve that considerable market share and appease this powerful interest.

10. As such, I do not think that Twitter acted then or now in good faith like a neutral social service platform provider should. I also expect that, and I do not believe that, private social exchanges that are not posted to social media should be policed by either foreign governments or tech-Giants as such would put a horrible chill over all discourse and debate, let alone prospects of reform.

11. I also believe that prominent democracy activists as diverse as Lech Wałęsa and Mahatma Gandhi may have had unfriendly or unpleasant private exchanges with detractors. If I had an argument on the phone or by text with a friend, associate, or a politically motivated detractor I would be very surprised indeed if AT&T cut off my carrier service and denied me access to my personal contacts.

12. Clearly Twitter did not properly investigate their employees before hiring them, failed to safeguard my account, and violated multiple state and federal statutes. Clearly Twitter purposely, or in something kindred to willful blindness, has allowed the KSA to utilize its

protocols in such a manner as to achieve their objective of silencing their critics, either by using Twitter to throw them off the Twitter platform or silencing them in the traditional sense of the word as authoritarian regimes are want to do (*e.g.*, imprisoning or disappearing dissidents, detractors, and would be reformers).

13.     I have alleged in my Complaint a Violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.*, Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), Stored Communications Act, 18 U.S.C. §2701, et. seq., California's Unfair Competition Law, California Business and Professions Code § 17200, et seq., unjust enrichment, breach of contract, promissory estoppel, intrusion upon seclusion, negligent hiring, supervision, and retention, civil conspiracy, negligence, and replevin and delivery, because I believe that Twitter collaborated with the KSA and its agents willfully, for profit and control, and at the very least demonstrated the negligence of an ostrich with its head in the sand.

14.     By failing to live up to its actual and implied promise of safeguarding the personal information of my followers and sources, Twitter has caused irreparable harm to both myself and those individuals. The actual number of Khashoggi widows is perhaps unknowable, as is the exact number of imprisoned or silenced, or the setbacks to achieving genuine democratic reforms in the KSA, without further discovery and investigation including access to my contacts. Such things are perhaps not quantifiable, though clearly a broken promise paid for in both blood and money is a broken trust and a broken contract. I believe that when Twitter represented it would safeguard my information, and that of my sources and followers, we all relied on that and it assumed a duty of high trust – a fiduciary obligation that Twitter broke by complicity and recklessness.

15.     Adding insult to injury, Twitter barring me from accessing the tens of thousands of KSA and other Arab-language followers and sources has curtailed my ability to report

credibly and in real time on events unfolding in the KSA and elsewhere, and therefore, on my ability to impact social and political reform and change. In terms of damages, I appreciate the foregoing damages are incalculable.

16.     In pecuniary terms that are the yardstick of courthouses, as a freelance journalist and author, this has cost me hundreds of thousands of dollars in lost revenue from writing articles and books and through podcasts that would in turn have provided me with revenue that I could have ploughed back into coverage of KSA excesses, which would keep hope alive and, I pray, effectuate change in the KSA in my lifetime.

17.     I, therefore, respectfully implore this Court to hold Twitter accountable for their actions in misrepresenting themselves as an objective, fair platform for the free and safe exchange of ideas and for collaboratively and recklessly siding with tyrants in exchange for market share and investment in contravention of the public persona that Twitter has cultivated worldwide as a progressive and honest platform.

18.     Based on the foregoing, I respectfully request that the Court deny Twitter's motion to dismiss.  Please do not let Twitter hide and avoid further discovery. There are ample questions of fact that a jury should hear and decide upon.

19.     In denying their motion, I believe the Court will be setting an example by communicating to tech giants that they cannot represent to their users that they are acting in "good faith," and then do something entirely incompatible with "good faith," and expect to avoid any liability. At a minimum, if Twitter is subject to further discovery and further scrutiny, perhaps they can be made to live up to their representations to current and prospective users.

20.     Certainly, in a complicated and dangerous world, corporate actors like Twitter should not be directly or indirectly suborning authoritarian regimes like Saudi Arabia with their

draconian policies toward women and disdain for free speech. Corporate actors like Twitter were credited with having a favorable impact on the so-called Orange Revolution. If Twitter is throwing in with authoritarian regimes for profit, this renders their public promises and platitudes and sale pitches, which in and of themselves create a certain expectancy interest, not just meaningless but something worse – a dangerous lie that could be undermining free societies while bolstering totalitarianism elsewhere.

21.     I ask only that this Court grant me the opportunity to be heard—to afford me my day in court—so that I may attain justice for myself and those who have been permanently silenced.

I declare under penalty of perjury, that the foregoing is true and correct.

Executed in Falls Church, VA on January 17, 2022

By :  _____

ALI AL-AHMED